The Round Lake Association, Respondent, *v.* Bradford D. Kellogg, Appellant.

Plaintiff, a corporation incorporated for camp meeting and religious purposes, and owning lands for those purposes, adopted a constitution which gave to its trustees the general oversight of all the business of the association and provided for the election by them of an executive committee, which should have power to act for them during the interim of their regular meetings, and also have general oversight of all the interests of the camp meeting, and should arrange the prices for ground rents and other privileges. Plaintiff leased two lots upon the grounds of said corporation; each lease was for the term of ninety-nine years, and contained conditions to the effect that it was "subject to all the rules and regulations which may from time to time be adopted and promulgated " by plaintiff for the government of its grounds, which were declared to be a part of the lease as if incorporated therein. These leases were assigned to plaintiff, who erected a store on the demised premises. Plaintiff's executive committee thereafter adopted certain rules and regulations, copies of which were posted in public places, distributed among the cottages on the grounds and received general recognition by the association, providing, among other things, that goods or merchandise should not be sold on any of the lots leased by the association without a license or permission being first obtained from its officers. Said executive committee gave to defendant a permit to conduct a store on his lots for the term of five years upon payment of a sum specified annually; after the first year defendant refused to pay the specified sum, and continued to sell goods although notified by plaintiff's superintendent to desist from so doing without a license. In an action to restrain defendant from selling any goods on the lots without having first obtained a license, *held*, that the executive committee had power to enact said rules and regulations; that a finding that they were reasonable and proper was justified; that the conditions in the leases were valid as between the parties and were binding upon defendant as assignee ; that plaintiff was entitled to the aid of a court of equity to compel defendant to observe said conditions; and so, that a judgment restraining him from selling any goods or merchandise upon the lots without first obtaining a license was proper.

(Argued January 30, 1894; decided February 27, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon

an order made September 14, 1892, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are set forth in the opinion.

*C. H. Sturges* for appellant. The complaint should have been dismissed upon appellant's motion at the opening of the case on the ground that·it failed to state facts sufficient to constitute a cause of action. (*Purdy* v. *Coar*, 109 N. Y. 448; *Driscoll* v. *W. B. C. M. Co.*, 59 id. 96, 102; *Bank of Attica* v. *M. & T. Bank*, 20 id. 501; *Kent* v. *Q. M. Co.*, 78 id. 159; *Reed* v. *T. T. M. Co.*, 39 Ga. 98; *Trustees Free School* v. *Flint*, 13 Metc. 539; *People* v. *M. Society*, 24 Barb. 570.) The rule or regulation set forth in the complaint was not legally adopted by plaintiff, and no so-called rule or regulation restricting the conduct of business upon defendant's lot or exacting a fee therefor, of which proof was given upon the trial, was ever legally adopted or became valid. (*Taylor* v. *Griswold*, 14 N. J. Law, 222, 250; 1 Bouvier's Inst. 79; *Thompson* v. *Schermerhorn*, 6 N. Y. 92; *In re E. I. S. Bank*, 75 id. 388, 393; *Birdsall* v. *Clark*, 73 id. 73.) Neither the so-called rule or regulation set forth in the complaint, nor any of the similar rules or regulations of which proof has been given, was authorized by the provisions of plaintiff's charter, or the general provisions of the Revised Statutes. Each and all were invalid. (*People* v. *M. Society*, 24 Barb. 570; *Kent* v. *Q. M. Co.*, 78 N. Y. 159, 182.) This so-called rule or regulation is not consistent with the Constitution or law of the land, and, therefore, is void. (*Yick Wo* v. *Hopkins*, 118 U. S. 356; *Sharpless* v. *Mayor, etc.*, 21 Penn. St. 147; *In re Jacobs*, 98 N. Y. 98.) The power of plaintiff has been used as a snare, and equity will not aid it against this appellant. (*Whitney* v. *U. F. Co.*, 11 Gray, 359.) The by-law, or so-called rule or regulation set forth in the complaint, and each of the similar rules or regulations of which proof has been given, violated plaintiff's contract with the

defendant. (*Alexander* v. *Caldwell*, 83 N. Y. 480; *Kent* v. *Q. M. Co.*, 78 id. 159; *People* v. *Rosenberg*, 138 id. 410; *Kennebec P. R. R. Co.* v. *Kendal*, 31 Maine, 470, 477; *Driscoll* v. *W. B. C. M. Co.*, 59 N. Y. 105; *People* v. *O'Brien*, 111 id. 1; *Mayor, etc.,* v. *T. A. R. R. Co.*, 33 id. 42.) The court erred particularly in refusing to find the contents of the leases on the east side on the ground that they were "not competent or material," for it had received the evidence of such contents. (*Flora* v. *Carbeau*, 38 N. Y. 111.) By the decree of the Special Term the defendant has been unlawfully deprived of the use of his property. (*Huckenstine's Appeal*, 70 Penn. St. 102.)

*E. Countryman* and *Charles S. Lester* for respondent. The defendant holds his property as a member of the Round Lake Association, primarily for the purposes for which that association was incorporated, and subject to all the rules and regulations of the corporate body. (*Post* v. *W. S. R. Co.*, 123 N. Y. 580; *Bowen* v. *Beck*, 94 id. 86; *A. D. Co.* v. *Leavitt*, 54 id. 35; Laws of 1868, chap. 617, § 3.) The association could not, if it would, at least without the consent of all concerned, abandon the corporate purpose or renounce the dedication it has made of the grounds to religious uses. The lessees have acquired rights to have the corporate purpose fulfilled, which cannot be rejected or ignored. And these rights rest as well upon the principle of dedication as of express covenant. (*Hunter* v. *Sandy Hill*, 6 Hill, 407; *Dezell* v. *Odell*, 3 id. 215; *Child* v. *Chappell*, 9 N. Y. 256; *Story* v. *E. R. Co.*, 90 id. 157; *Johnson* v. *S. I. C. M. Assn.*, 122 id. 330; *Watertown* v. *Cowen*, 4 Paige, 510.) The defendant having become a member of the corporation, and having definitely agreed to accept his title to the possession of his property, subject to any and all corporate rules and regulations which had been then or might thereafter be adopted in furtherance of corporate purposes and interests, either relating to that particular property or for the general government of the grounds, it follows as such lessee and occupant and mem-

ber, he is amenable to all the reasonable rules and regulations of the corporate body. (*Flint* v. *Pierce*, 99 Mass. 68, 70; *Perrine Case*, 7 Watts & Serg. 348; *Cummings* v. *Webster*, 43 Maine, 192; *Pressler Case*, 17 La. Ann. 127; *Morton Case*, 25 Mo. 393; *Steward* v. *Winters*, 4 Sandf. Ch. 588, 590; *Howard* v. *Ellis*, 4 Sandf. 369; *Dodge* v. *Lambert*, 2 Bosw. 570; *Ambler* v. *Skinner*, 7 Robt. 561; *De Forest* v. *Byrne*, 1 Hilt. 343; *Moore* v. *Pitts*, 53 N. Y. 85, 86.) The rules and regulations made by the trustees and executive committee, from time to time, subsequent to September, 1868, and March, 1869, when the original constitution and by-laws were adopted, are valid and effectual as the acts of the corporation, and binding upon all its members. (*Hoyt* v. *Thompson*, 19 N. Y. 207; *S. E. L. Co.* v. *C. N. Bank*, 127 id. 517; *Martins* v. *C., etc., Ins. Co.*, 15 J. & S. 520, 521; *Smith* v. *Nelson*, 18 Vt. 512; *U., etc., Ins. Co.* v. *Keyser*, 32 N. H. 313, 315; *B. E. S. R. Co.* v. *B. S. L. R. Co.*, 111 N. Y. 132, 140.) It was urged below that the imposition of a license fee for the privilege of doing business on the grounds was an open violation of defendant's contract rights under the lease. This contention is based upon two obvious errors, one of which is a palpable perversion of fact and the other an equally plain misapprehension or misapplication of law. (*Mayor, etc.*, v. *B. R. R. Co.*, 97 N. Y. 275; *Chautauqua* v. *Alling*, 46 Hun, 581.) The objection was also interposed on behalf of the defendant that the rules and regulations were unreasonable and inconsistent with the constitution and the laws. This is untenable. (*Chautauqua* v. *Alling*, 46 Hun, 582; *Matthews* v. *Associated Press*, 136 N. Y. 323; *People* v. *Arensberg*, 105 id. 123; *People* v. *West*, 106 id. 293; *People* v. *King*, 110 id. 418; *People* v. *Budd*, 117 id. 1, 8, 14; *Lawton* v. *Steele*, 119 id. 226; *Carthage* v. *Frederick*, 122 id. 268; *A. D. Co.* v. *Leavitt*, 54 N. Y. 35; *C. College* v. *Lynch*, 70 id. 440, 441; *Wheelock* v. *Noonan*, 108 id. 179; *Herman* v. *Roberts*, 119 id. 138; *Dexter* v. *Beard*, 25 N. Y. S. R. 664; 2 High on Inj. § 1153; *Lewis* v. *Gollner*, 129 N. Y. 227; *Watrous* v. *Allen*, 57 Mich. 362; *French* v. *Macale*, 2 Drury & War. 269; *Coles* v. *Sims*, 5

De G., M. & G. 1; *Barrett* v. *Blograve*, 5 Ves. 555; *Hardy*
v. *Martin*, 1 Cox, 26; *Fox* v. *Scord*, 33 Beav. 327.)

Bartlett, J.  This is an appeal from a judgment affirming
the judgment of the special term enjoining the defendant
from selling or offering for sale any goods, wares or merchan-
dise upon the lots leased by him of the plaintiff, or upon any
of its grounds, without first obtaining a license from the
plaintiff.

The plaintiff is a corporation organized as "The Round
Lake Camp Meeting Association of the Methodist Episcopal
Church of the Troy Conference," under chapter 617, Laws
1868.  The name of the corporation was changed, by order
of the Saratoga County Court, July 8th, 1887, to the Round
Lake Association.  In Sept., 1868, the trustees adopted a con-
stitution and by-laws, which were, on the 31st day of March,
1869, adopted and approved at a meeting of the stockholders.
This constitution declared that the objects of the association
were to appoint and hold such camp meetings within the
bounds of the Troy conference as they may choose.

It further provided that the trustees should elect out of
their number a president, vice-president, treasurer, secretary
and a prudential committee of three, who, together, should
constitute an executive committee and have full power to act
for the board of trustees during the interim of their regular
meetings, and hold office until their successors were elected.
It also provided in a separate article that the executive com-
mittee should have general oversight of all the interests of the
camp meeting, and that they should arrange " the prices for
tents, ground rents, fees for entrance for teams, railroad fares,
privileges for boarding tents and other privileges."

The trial court finds the constitution was legally revised in
1874, but not changed in the particulars material to this action.
On the 26th of March, 1887, certain rules and regulations
were adopted by plaintiff's executive committee and posted in
public places and distributed among the cottagers, which con-
tained, among others, the following:

"1. Merchandise, general or special, shall not be sold or offered for sale on any lot, or on any place on the association grounds, either on the east or west side of the railroads, without a purchased permit given in writing by the executive committee.    *    *    *

"4. No peddler, organ grinder, tramp, or other person with goods or wares of any kind to sell, shall be allowed to ply his vocation on the grounds."

On May 3rd, 1890, the executive committee also adopted the following additional rules and regulations:

"No person shall sell or offer to sell goods, wares or merchandise upon any of the lots leased by this association, or upon the grounds of the association, without having first obtained a license or permission therefor from the officers of this association.

"No person shall carry on any trade, business or vocation on such lots, or upon the grounds of the association, without first having obtained a license or permission from the officers of this association, or without having first paid the rent or fee. fixed by the officers therefor."

May 5th, 1890, defendant was notified, in writing, by plaintiff's superintendent, that the selling of merchandise on his lot was in violation of the rules and regulations, and that he was required to desist and refrain from doing so without the written permission of the executive committee. The defendant then informed the superintendent that he proposed to fight it out, and know what he could do, and would continue to sell as long as he could. On the 24th of May, 1890, copies of the rules adopted on the 3rd. of May, 1890, with a notice of their adoption, and that defendant was required to obey the same, were served personally on the defendant. This action was commenced May 26th, 1890.

The plaintiff, in the year 1884, leased to Caroline J. Bancroft lot No. 1426, and to Rice Hall lot No. 1427, and in September, 1886, both of said leases were assigned to the defendant.

These leases contained the following provisions, viz. : " This lease is granted by said party of the first part and accepted by said party of the second part, subject to the following express conditions, reservations and restrictions :     *     *     *

" 5th. This lease is accepted by the said party of the second part, subject to all the rules and regulations which may from time to time be adopted and promulgated by the party of the first part for the government of said grounds, and which are hereby made a part of this lease, as fully to all intents and purposes as if they were incorporated therein.

" 6th. A refusal on the part of the party of the second part, his heirs, legal representatives or assigns, to fulfill all or either of the foregoing covenants, conditions and agreements, shall operate as a forfeiture of this lease, and said party of the first part may, at its option, after such failure or refusal, re-enter upon said premises without suit or legal process, and re-possess, hold and enjoy the same, as of its first and former estate. To all of which terms, covenants and conditions the parties hereto mutually consent and agree."

On the 26th day of March, 1887, the executive committee gave permission to the defendant to conduct a store on the lots covered by these leases, for the sale of groceries, dry goods, etc., on the payment of $50 for the year 1887, and for the next four years at the rate of not exceeding $100 per year.

Before erecting his store the defendant was informed that he would have to pay for the privilege of doing business. The defendant, with the exception possibly of the first payment of $50, refused to pay for the privilege of doing business, and continued to sell his merchandise in violation of the rules and regulations of the association.

The questions presented on this appeal are whether the defendant, as assignee of said leases, is bound by the rules and regulations of the association, and whether the rules and regulations adopted by the executive committee are, in contemplation of law, the rules and regulations of the association.

The learned counsel for the defendant, in view of the fact that the lease is for a term of ninety-nine years, and renew-

able for a like term of years forever, insists that such a lease is in law a fee simple running as it does to the heir and not the legal representative.

It is not important to determine, for the purposes of this case, whether the defendant took a fee or something less than a freehold estate.

This court has held that where a grantee binds himself by a covenant in his deed limiting the use of the land purchased in a particular manner so as not to interfere with the trade or business of the grantor, and the covenant is valid as between the parties, it is also binding upon and may be enforced against a grantee of the covenantor taking title with notice of the restriction. (*Hodge* v. *Sloan*, 107 N. Y. 244.) In the case cited the grantor was a dealer in sand and the grantee covenanted in the deed that he would not sell any sand off the premises conveyed.

The grantee subsequently made a deed containing no such covenant, but his grantee took with notice, and was held to be bound by the original covenant.

Judge Danforth said (p. 249): "We see nothing unreasonable in the restriction which the grantee imposed upon himself. He was not a dealer in sand. He wanted to buy the land on the best terms and in the most advantageous way, and in order to do this it was necessary that he should preclude himself from so using it as that by its means he should enter into competition with the vendor. I cannot find that such a covenant contravenes any rule of public policy, nor that it is incapable of being enforced in a court of equity. It stands upon a good consideration and is not larger than is necessary for the protection of the covenantee in the enjoyment of his business."

This same principle had been previously recognized by this court in *Tallmadge* v. *East River Bank* (26 N. Y. 105) and *Trustees* v. *Lynch* (70 id. 440). Also by the High Court of Chancery in England in *Tulk* v. *Moxhay* (1 Hall & Twells, 105). This court has recently approved the earlier cases in *Rowland* v. *Miller* (139 N. Y. 93). It is quite clear the

plaintiff was entitled, in executing either a deed or lease, to. insist upon such covenants as to the use of lots sold or rented as would protect it in the management of its property in such. manner as would be consistent with the objects of its incorporation. The acceptance of the lease even without becoming a party to it was sufficient to render the lessee and his assignee subject to its terms and provisions as if they had signed it. (*Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35 ; *Bowen* v. *Beck*, 94 id. 86 ; *Post* v. *West Shore R. R. Co.*, 123 id. 580.)

It is equally clear that the defendant on accepting the. assignment of the leases became *ipso facto* a member of. the association and was bound by such rules and regulations as. were afterwards adopted and promulgated.

The rules and regulations adopted by the executive committee were found by the trial court to be reasonable and proper, and, in view of the objects for which plaintiff was. incorporated, we are of opinion this finding was authorized.

The grounds of the association were dedicated, primarily, to the purpose of holding camp meetings, which were originally held in tents, but afterwards a large permanent auditorium was erected ; buildings were also put up for summer schools and Sunday school assemblies. These exercises, religious and educational, continue during the summer for about eight weeks, and from ten to twenty thousand people assemble on such occasions. The grounds were divided into lots to enable persons habitually attending the camp meetings to erect cottages.

As the principal and primary use of the grounds of the association was for religious purposes, it is manifest that the plaintiff must necessarily maintain the strictest supervision of its property. The regulation of the vending of goods in a store or from house to house falls within the limits of this reasonable power.

This brings us to the remaining question in the case, whether the adoption of the rules and regulations by the executive committee is regular and binds the association and its members.

This depends upon the construction of the constitution adopted by the association in 1869, already referred to, and the powers of the executive committee thereunder.

By this constitution (article IV) the trustees were given the general oversight of all the interests of the association, and the executive committee was clothed with full power to act for the trustees during the interim of their regular meetings. The executive committee by article VI also have general oversight of all the interests of the camp meeting, and among other things arrange ground rents and other privileges.

These powers conferred upon the executive committee were ample to enable it to enact the said rules and regulations, which were posted in public places, distributed among the cottages, and received general recognition by the association.

We are of opinion that the executive committee were given sufficient power by article VI of the constitution to enact rules and regulations, without regard to its authority to act for the trustees when they were not in session, under article IV.

The power to arrange ground rents and other privileges fully authorized the enactment of the rules and regulations to which we have already referred. It is also established by the evidence that these rules and regulations were recognized and acted upon by the trustees and members of the plaintiff in a manner that amounted to legal ratification and confirmation. The state of facts disclosed by this record clearly entitled the plaintiff corporation to the aid of a court of equity in compelling the defendant to observe the covenants and conditions by which he was bound as assignee of the leases in question. We have examined the various exceptions in the case and find no error that should lead to the reversal of the judgment.

The judgment is affirmed, with costs.

All concur.

Judgment affirmed.